UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MUNYA BENGESA,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>IMMUNOMEDICS, INC., DR. BEHZAD AGHAZADEH, ROBERT AZELBY, DR. CHARLES BAUM, M.D., Ph.D., SCOTT CANUTE, BARBARA DUNCAN, PETER BARTON HUTT, and DR. KHALID ISLAM,<br><br>　　　　　　　Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Munya Bengesa ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Immunomedics, Inc., ("Immunomedics" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Immunomedics website concerning the Company's public statements; and (d) review of other publicly available information concerning Immunomedics and the Defendants.

**NATURE OF THE ACTION**

1.　Plaintiff brings this action on behalf of himself against the Company and members of the Company's Board of Directors (the "Board" or the "Individual Defendants") for

violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by affiliates of Gilead Sciences, Inc. ("Gilead") (the "Proposed Transaction").

2. On September 13, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Gilead. Pursuant to the terms of the Merger Agreement, each Immunomedics common share issued and outstanding will be converted into the right to receive $88.00 per Share, net to the holder in cash, without interest (the "Merger Consideration"). In connection with the Proposed Transaction, Maui Merger Sub, Inc., a wholly owned subsidiary of Gilead, commenced a tender offer to acquire all of Immunomedics' outstanding common stock and will expire on October 22, 2020.

3. On September 24, 2020, the Company filed an incomplete and materially misleading Recommendation Statement with the SEC (the "Recommendation Statement") in connection with the Proposed Transaction. The Recommendation Statement omits material information concerning the Proposed Transaction.

4. Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as Immunomedics stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

5. As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

9. Plaintiff has been the owner of the common stock of Immunomedics since prior to the transaction herein complained of and continuously to date.

10. Defendant Immunomedics is a Delaware corporation with its principal executive offices located at 300 The American Road, Morris Plains, New Jersey 07950. The Company's stock trades on the NASDAQ under the ticker "IMMU."

11. Defendant Dr. Behzad Aghazadeh ("Aghazadeh") has been the Executive Chairman of the Company's Board at all times during the relevant time period.

12. Defendant Robert Azelby ("Azelby") has been a member of the Company's Board at all times during the relevant time period.

13. Defendant Dr. Charles Baum. M.D., Ph.D. ("Baum") has been a member of the Company's Board at all times during the relevant time period.

14. Defendant Scott Canute ("Canute") has been a member of the Company's Board at all times during the relevant time period.

15. Defendant Barbara G. Duncan ("Duncan") has been a member of the Company's Board at all times during the relevant time period.

16. Defendant Peter Barton Hutt ("Hutt") has been a member of the Company's Board at all times during the relevant time period.

17. Defendant Dr. Khalid Islam ("Islam") has been a member of the Company's Board at all times during the relevant time period.

18. Defendants Aghazadeh, Azelby, Baum, Canute, Duncan, Hutt, and Islam are collectively referred to herein as the "Individual Defendants."

19. Defendant Immunomedics, along with the Individual Defendants, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Immunomedics develops next-generation antibody-drug conjugate (ADC) technology, committed to help transform the lives of people with hard-to-treat cancers. The Company's proprietary ADC platform centers on using a novel linker that does not require an enzyme to release the payload to deliver an active drug inside the tumor cell and the tumor microenvironment, thereby producing a bystander effect. Trodelvy, the Company's lead ADC, is the first ADC the FDA has approved for the treatment of people with metastatic triple-negative breast cancer and is also the first FDA-approved anti-Trop-2 ADC.

**The Company Announces the Proposed Transaction**

21.     On September 13, 2020, Immunomedics issued a press release announcing that the Company had entered an agreement in connection with the Proposed Transaction. The press release stated, in pertinent part:

> FOSTER CITY, Calif. & MORRIS PLAINS, N.J.--(BUSINESS WIRE)-- Gilead Sciences, Inc. (Nasdaq: GILD) and Immunomedics (Nasdaq: IMMU) announced today that the companies have entered into a definitive agreement pursuant to which Gilead will acquire Immunomedics for $88.00 per share in cash. The transaction, which values Immunomedics at approximately $21 billion, was unanimously approved by both the Gilead and Immunomedics Boards of Directors and is anticipated to close during the fourth quarter of 2020.
>
> This press release features multimedia. View the full release here: https://www.businesswire.com/news/home/20200913005051/en/
>
> The agreement will provide Gilead with Trodelvy™ (sacituzumab govitecan-hziy), a first-in-class Trop-2 directed antibody-drug conjugate (ADC) that was granted accelerated approval by the U.S. Food and Drug Administration (FDA) in April for the treatment of adult patients with metastatic triple-negative breast cancer (mTNBC) who have received at least two prior therapies for metastatic disease. Immunomedics plans to submit a supplemental Biologics License Application (BLA) to support full approval of Trodelvy in the United States in the fourth quarter of 2020. Immunomedics is also on track to file for regulatory approval in Europe in the first half of 2021.
>
> In the Phase 3 ASCENT study, which was halted early due to efficacy based on the unanimous recommendation of the independent Data Safety Monitoring Committee, Trodelvy significantly improved progression-free survival (PFS) and overall survival (OS) in previously treated patients with advanced mTNBC. Detailed results from this study are expected to be presented at the upcoming European Society for Medical Oncology (ESMO) Virtual Congress 2020.
>
> Beyond mTNBC, Trodelvy is also being studied in an ongoing Phase 3 trial in third line HR+/HER2- breast cancer and a registrational Phase 2 study in bladder cancer. Additional ongoing studies are evaluating the potential of Trodelvy as a treatment for non-small cell lung cancer and other solid tumor types. Trodelvy is being studied as both a monotherapy and in combination with checkpoint inhibitors and other non-immuno-oncology products by Immunomedics and independent investigators. Additional clinical data for Trodelvy in bladder cancer and other solid tumors will also be presented at ESMO this coming week.

"This acquisition represents significant progress in Gilead's work to build a strong and diverse oncology portfolio. Trodelvy is an approved, transformational medicine for a form of cancer that is particularly challenging to treat. We will now continue to explore its potential to treat many other types of cancer, both as a monotherapy and in combination with other treatments," said Daniel O'Day, Chairman and Chief Executive Officer, Gilead Sciences. "We look forward to welcoming the talented Immunomedics team to Gilead so we can continue to advance this important new medicine for the benefit of patients with cancer worldwide."

"We are very pleased that Gilead recognized the value of Trodelvy – both for the important role it has already begun to play for patients with metastatic triple-negative breast cancer and for its potential to help many other patients with cancer in the future," said Behzad Aghazadeh, PhD, Executive Chairman of Immunomedics. "We are excited for the opportunities ahead of us as we join with Gilead to advance our shared mission in defeating cancer. By working with Gilead, we have the opportunity to accelerate our progress and improve care for patients in need of new therapies."

**Compelling Strategic Benefits**

- **Rapidly Expanding Trodelvy's Benefit for Patients Globally:** After closing Gilead intends to initiate numerous additional mid- and late-stage studies in the near term to determine which patients will benefit from Trodelvy as both a monotherapy or in combination with other products. Gilead brings commercial, medical, regulatory and manufacturing expertise, which will help rapidly advance Trodelvy through development and reach additional patients. Gilead will also bring to Immunomedics an established infrastructure and operations in Europe and Japan to support the launch of Trodelvy in those regions, pending approval. After closing, Gilead will retain global rights to Trodelvy outside of greater China, South Korea and certain Southeast Asian countries.

- **Trodelvy is Foundational to Gilead's Oncology Franchise:** Trodelvy will bring to Gilead a cornerstone product that broadens and deepens the company's solid tumor pipeline, building on current marketed products and late-stage clinical candidates for patients with hematological malignancies at Kite and Gilead, including Yescarta®, Tecartus® and magrolimab.

  Trodelvy is approved as a third-line treatment for mTNBC and has shown promise for earlier stages of the disease. TNBC represents approximately 15 to 20 percent of all breast cancer cases and is generally considered the most aggressive form of breast cancer. HR+/HER2- breast cancer accounts for more than 70 percent of all breast cancers.

- **Accelerates Gilead's Revenue and EPS Growth:** Trodelvy was launched in May of 2020 and has significant commercial potential in mTNBC and other solid

6

tumors. In addition to immediately accelerating Gilead's revenue growth, the acquisition of Immunomedics is expected to be neutral to accretive to Gilead's non-GAAP EPS in 2023 and significantly accretive thereafter.

**Transaction Terms and Financing**

Under the terms of the merger agreement, a wholly-owned subsidiary of Gilead will promptly commence a tender offer to acquire all of the outstanding shares of Immunomedics' common stock. The $88.00 per share acquisition price represents a 108 percent premium to Immunomedics' closing price on September 11, 2020. Following successful completion of the tender offer, Gilead will acquire all remaining shares not tendered in the offer through a second step merger at the same price as the tender offer.

The consummation of the tender offer is subject to various conditions, including a minimum tender of at least a majority of outstanding Immunomedics shares, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and other customary conditions.

The tender offer is not subject to a financing condition and will be funded through approximately $15 billion in cash on hand, as well as approximately $6 billion in newly issued debt. Gilead expects to retain an investment grade credit rating following this transaction and this agreement does not alter Gilead's stated capital allocation strategy or its commitment to maintain and grow its dividend over time.

Lazard and Morgan Stanley & Co. LLC are acting as financial advisors to Gilead. Centerview Partners LLC and BofA Securities are acting as financial advisors to Immunomedics. Cowen & Company, LLC also provided advice to Immunomedics. Davis Polk & Wardwell LLP is serving as legal counsel to Gilead and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Immunomedics.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE RECOMMENDATION STATEMENT**

22.     On September 24, 2020, the Company authorized the filing of the Recommendation Statement with the SEC.  The Recommendation Statement recommends that the Company's stockholders tender their shares in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Recommendation Statement prior to its filing with the SEC and dissemination to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Recommendation

Statement misrepresent and/or omit material information that is necessary for the Company's shareholders to make informed decisions concerning whether to tender their shares in favor of the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Managements Projections

24. The Recommendation Statement contains financial projections prepared by senior members of Immunomedics' and Gilead's management in connection with the Proposed Transaction, but fails to provide material information concerning such.

25. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26. In order to make management's projections included in the Recommendation Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

27. Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to, all line items used to calculate: (i) EBIT; and (ii) Unlevered Free Cash Flow.

28. Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when deciding whether to tender their shares in connection with the Proposed Transaction.

29. In addition to the above, the Recommendation Statement notes that the Projections prepared by management are "risk-adjusted," but fails to explain why only the "risk-adjusted" figures are disclosed.

30. Disclosure of this information is vital to provide investors with the complete mix of information necessary to make an informed decision when deciding whether to tender their shares in connection with the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Centerview's Opinion**

31. The Recommendation Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") concerning the Proposed Transaction but fails to provide material information concerning such.

32. With respect to Centerview's *Selected Public Company Analysis*, the Recommendation Statement fails to disclose (i) the inputs and assumptions used by Centerview in selecting the reference range of 4.0x to 6.0x 2024E revenue multiples; and (ii) the Company's fully diluted outstanding shares.

33. With respect to Centerview's *Selected Precedent Transactions Analysis*, the Recommendation Statement fails to disclose (i) the inputs and assumptions used by Centerview

9

in selecting the reference range of 5.0x to 8.0x of implied four-year forward revenue multiples; and (ii) the Company's fully diluted outstanding shares.

34. With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) Centerview's basis for application of the range of discount rates from 9.0% to 11.0%; (ii) the Company's implied terminal value and the inputs for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2034 at a rate of free cash flow decline of 30.0% year-over-year for Trodelvy and IMMU-130, increase 5% year-over-year in perpetuity for the Company's SN-38 antibody-drug conjugate platform and increase 3% year-over-year for other corporate items, and (iii) the fully diluted outstanding shares as of September 9, 2020, and as of September 12, 2020 with the corrected fully-diluted share count.

35. With respect to Centerview's *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the premiums paid in each of the biopharmaceutical transactions reviewed by Centerview for its analysis.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

37. Without the above described information, the Company's shareholders are not fully informed with respect to the Proposed Transaction. Accordingly, in order to provide

shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(d) of the Exchange Act and Rule 14d-9 Promulgated Thereunder)

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

40. As discussed herein, the Recommendation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresent and/or omit material facts concerning the Proposed Transaction.

41. Defendants prepared, reviewed, filed and disseminated the false and misleading Recommendation Statement to Immunomedics shareholders. In doing so, Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42. The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

43. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were undoubtedly aware of this

11

information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing Immunomedics' financial advisor's complete financial analyses purportedly summarized in the Recommendation Statement.

44. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

45. Immunomedics is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Recommendation Statement.

46. Defendants knew that Plaintiff and other shareholders would rely upon the Recommendation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

47. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

48. Plaintiff has no adequate remedy at law.

## COUNT II

**(Against All Defendants for Violation
Of Section 14(e) of the Exchange Act)**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made false statements of material fact or failed to

state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

51. Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Recommendation Statement in determining whether to tender shares in favor of the Proposed Transaction.

52. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

## COUNT III

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

53. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Immunomedics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Immunomedics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

55. Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement contain the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

58. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.	Directing the Individual Defendants to disseminate an Amendment to the Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.	Directing Defendants to account to Plaintiff for their damages sustained because of the wrongs complained of herein;

D.	Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.	Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: October 2, 2020                          Respectfully submitted,

By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*